UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | |
| | ) | Docket no. 2:18-cr-00133-GZS |
| DAVID ALEXANDRE & | ) | |
| KEVIN WALLACE, | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER ON MOTION TO SUPPRESS**

Before the Court is Defendants' Motion to Suppress & Request for a <u>Franks</u> Evidentiary Hearing (ECF No. 57). Additionally, Defendants filed a Motion to Seal (ECF No. 58), which seeks the permanent sealing of six exhibits that Defendants submit in connection with their Motion to Suppress. As explained below, the Court GRANTS the Motion to Seal and DENIES the Motion to Suppress and the Request for a Hearing.

**I.  MOTION TO SEAL**

Counsel for Defendant Alexandre filed a motion to seal the exhibits supporting the pending Motion to Suppress, indicating a request from the Government that only the facts laid out in Defendant's Motion papers be publicly disclosed at this time. The Court hereby GRANTS WITHOUT OBJECTION the Motion to SEAL but orders that the Motion to Seal (ECF No. 58) itself be unsealed.

The exhibits provided to the Court as sealed attachments consist of: (1) the twelve-page search warrant application (Def. Ex. A); (2) a one-page report from Trooper Adam Schmidt regarding a January 9, 2018 debriefing of a confidential source (Def. Ex. B), (3) a two-page

memorandum of interview detailing an interview conducted by U.S. Postal Inspector T.I. DuMond on February 21, 2018 (Def. Ex. C), (4) a one-page police report from Trooper Schmidt regarding a February 13, 2018 traffic stop (Def. Ex. D), (5) three-pages of notes from a February 14, 2018 debriefing of an informant (Def. Ex. E), and (6) a one-page report by Trooper William Pusey involving a January 7, 2018 well-being check that Pusey and Schmidt conducted at 38 Beech Street, Lyman, Maine (Def. Ex. F).

Having reviewed all of these exhibits as well as the related briefs, the Court concludes that it is possible for counsel to produce redacted versions of these six exhibits and thereby allow for some public review of the evidence the Court has relied on in deciding Defendants' Motion to Suppress. Therefore, counsel shall file proposed redacted versions of Defendants' Exhibits A-F exhibits to the Clerk's Office in paper no later than April 26, 2019.

## II. MOTION TO SUPPRESS

### A. Background

Defendants David Alexandre and Kevin Wallace are currently named in a six-count Indictment (ECF No. 26). The Indictment alleges that on or about February 28, 2018, Alexandre and Wallace each possessed methamphetamine with intent to distribute (Counts I & II), possessed a firearm in furtherance of drug trafficking (Count III & IV), and possessed a firearm while being an unlawful drug user (Counts V & VI).

On February 28, 2018, Maine State Police Trooper David Coflesky applied for a search warrant to search 38 Beech Street, Lyman, Maine ("the Target Residence"), as well as three specific vehicles located at the Target Residence. Trooper Coflesky supported his request for a search warrant with an affidavit containing sixty-eight numbered paragraphs. (See Def. Ex. A.) The affidavit recited law enforcement activity involving the Target Residence, which is located in the Oakwood Mobile Home Community, between December 2017 and February 23, 2018.

As a result of all of those activities, Trooper Coflesky indicated his belief that the occupants of the Target Residence were engaged in drug trafficking, particularly the distribution of crystal methamphetamine.

A Maine District Court Judge issued the warrant. Upon searching the Target Residence, the police discovered methamphetamine and firearms, which form the basis of the pending Indictment.

### B. Discussion

Defendants contend that the Court should grant a Franks hearing and ultimately suppress the seized methamphetamine and firearms because: (1) Coflesky's affidavit contained false information in paragraphs 15, 16, 34, 36 & 37; and (2) without that information, the affidavit was insufficient to establish probable cause for the search.

"To get a *Franks* hearing, a party must first make two 'substantial preliminary showings': (1) that a false statement or omission in the affidavit was made knowingly and intentionally or with reckless disregard for the truth; and (2) the falsehood or omission was necessary to the finding of probable cause." United States v. Rigaud, 684 F.3d 169, 174 (1st Cir. 2012). "Failure to make a showing on either element dooms a party's hearing request." Id. As to the second prong, the Court must "determine whether the totality of the revealed circumstances makes out a showing of probable cause, even with false facts stripped away, inaccurate facts corrected, and omitted facts included." United States v. Barbosa, 896 F.3d 60, 69 (1st Cir. 2018). "Probable cause to issue a warrant exists when, 'given all the circumstances set forth in the affidavit . . . there is a fair probability that contraband or evidence of a crime will be found *in a particular place*.'" United States v. Silva, 742 F.3d 1, 9 (1st Cir. 2014) (emphasis added) (quoting United States v. Reiner, 500 F.3d 10, 15 (1st Cir. 2007)).

3

In order to ultimately have evidence suppressed based on alleged false statements or omissions in a search warrant affidavit, "the defendant must meet an even more exacting standard [than for a *Franks* hearing]." United States v. Graf, 784 F.3d 1, 11-12 (1st Cir. 2015) (quoting United States v. Tzannos, 460 F.3d 128, 136 (1st Cir. 2006)). That is, the defendant "must (1) show that the affiant in fact made a false statement knowingly and intentionally, or with reckless disregard for the truth, (2) make this showing by a preponderance of the evidence, and (3) show in addition that with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause." Id. (citations and quotations omitted).

Here, the Court focuses its initial review of the search warrant affidavit on whether it establishes probable cause even if the paragraphs that Defendants assert are false are set aside. Excluding the allegedly false statements in paragraphs 15, 16, 34, 36 & 37, and viewing the remaining evidence in its "totality," there is ample evidence to establish probable cause to search the Target Residence.[1] Barbosa, 896 F.3d at 69. For example, the affidavit generally describes surveillance of the residence in which "an increased amount of vehicle traffic" with visitors who "did not appear to stay . . . for long." (Def. Ex. A at 833.) More specifically, the affidavit recounted that, on January 7, 2018, law enforcement officers entered the Target Residence for a well-check of one occupant and to search for another occupant believed to have an active arrest warrant. In addition to locating the subject of the warrant on that day, officers seized crystal methamphetamine, and photographed drug paraphernalia. (Def. Ex. A at 834.)

The affidavit also recounted in ten paragraphs the February 1, 2018 patrol by Corporal MacDonald in the area of 38 Beech Street. As explained in the affidavit, MacDonald observed a

---

[1] As to paragraph 37, the Government concedes in its Response that the references to "DAVID" should be read as reference to A.D., not Defendant Alexandre. Gov't Response (ECF No. 65), PageID # 191. Thus, the Court's review of the affidavit proceeds on this concession.

4

vehicle with a defective break light slowing down near the Target Residence and moving towards its driveway.  The officer attempted to pull the vehicle over, it fled, and, after a chase, the officer stopped the vehicle.  Upon being arrested, the driver claimed he did not know anyone at the Target Residence but admitted to having just used methamphetamine.  The next day, officers discovered a baggie containing what appeared to be methamphetamine in the area where the driver had been instructed to lay prone on the ground.  (Def. Ex. A at 835-36.)

The affidavit also recounts what law enforcement had learned as a result of a February 20, 2018 traffic stop near 38 Beech Street during which 1.96 grams of methamphetamine had been seized. As relayed in the affidavit, the three arrested occupants of the stopped vehicle indicated that they had driven a methamphetamine supplier, S.D., to the Oakwood Mobile Home Community, in order for him to acquire the necessary supply of methamphetamine they wanted to purchase.  After dropping S.D., the deal was delayed by concerns that law enforcement was in the area and had stopped another vehicle departing 38 Beech Street earlier in the evening.  Ultimately, the vehicle stop occurred while they were waiting to pick-up S.D.  As also relayed in the affidavit, S.D. had contact with law enforcement just two days prior on February 16, 2018.  During the interview on that day, S.D. stated that he had just come from, and was about to return to, the Target Residence where his friend lived.  (Def. Ex. A at 837-839.)

Finally, Coflesky's affidavit describes a "trash pull" of five trash bags left outside the Target Residence on February 23, 2018.  A search of those bags revealed: several hypodermic needles, "snorting straws," blue baggies with gold crowns (which matched baggies found in connection with the February 20, 2019 methamphetamine seizure), counterfeit money, a discarded cell-phone, and mail addressed to 38 Beech Street.  (Def. Ex. A. at 839.)

5

Viewed together, these facts clearly generate a "fair probability" that "contraband" or other evidence of illegal drug-related activity could be found in the Target Residence.[2] Silva, 742 F.3d at 8-9. The "accoutrements of the drug trade" discovered in the trash pull were a strong indicator that residents of 38 Beech Street were currently engaged in drug trafficking. See United States v. Rasberry, 882 F.3d 241, 250 (1st Cir. 2018) (finding that search revealing "accoutrements of the drug trade (specifically, plastic baggies, needles, and a digital scale)" gave rise to "a plausible inference that a drug-distribution operation was afoot"). There is also circumstantial evidence permitting the inference that S.D.'s methamphetamine source operated out of the Target Residence. See United States v. Bucuvalas, 970 F.2d 937, 940 n.3 (1st Cir. 1992) (noting that "circumstantial evidence alone may establish probable cause"). On top of all of that, officers had previously seized drugs and photographed drug paraphernalia at the Target Residence, and had observed a known methamphetamine user slowing down near the Target Residence before that user fled an attempted traffic stop. See Bucuvalas, 970 F.2d at 940; United States v. Kenney, 595 F. Supp. 1453, 1461 (D. Me. 1984) (acknowledging the fact that the "defendant's home had previously been found with drugs in it" may help establish probable cause to search a home). Unaccompanied by the allegedly false facts, this evidence is more than enough to establish probable cause to search the Target Residence. Silva, 742 F.3d at 9.

---

[2] Defendants' argument that the evidence must be suppressed as to Defendant Alexandre because the affidavit failed to "establish probable cause that Mr. Alexandre was engaged in the distribution of drugs," absent the allegedly false information, is unavailing. Def. Reply (ECF No. 68), PageID # 201. Indeed, this argument misapprehends the nature of search warrants. As the Supreme Court has explained, "[s]earch warrants are not directed at persons; they authorize the search of place[s] and the seizure of things, and as a constitutional matter they need not even name the person from whom the things will be seized." Zurcher v. Stanford Daily, 436 U.S. 547, 555 (1979) (internal citations and quotations omitted); see also United States v. Rodrigue, 560 F.3d 29, 34 (1st Cir. 2009) (describing the relationship between the defendant and the location to be searched as "neither here nor there for purposes of establishing probable cause to search for [illegal drugs]").

Having "plainly failed to meet the second [Franks hearing requirement]," the Court declines to address the first prong. Rigaud, 684 F.3d at 173. Additionally, because the Court finds that the remaining content of Coflesky's affidavit sufficiently established probable cause to search the Target Residence, the Court concludes Defendants cannot meet their burden to justify suppression of the evidence seized pursuant to the search warrant.

Beyond the paragraphs that Defendants assert contain false statements, Defendants also argue that Trooper Coflesky omitted that the Target Residence was a "boarding home" from the affidavit and that this omission "effect[s]" how the evidence may be viewed in terms of establishing probable cause. (Def. Mot., PageID # 154-155.) However, Defendants point to no specific evidence in the record that would permit the Court to conclude that the Target Residence was a boarding home or any other kind of multi-unit dwelling. See Franks v. Delaware, 438 U.S. 154, 171 (1978) ("To mandate an evidentiary hearing, the challenger's attack must be more than conclusory"). As far as the Court can tell, nothing in the record contradicts Coflesky's description of the Target Residence as a "trailer style single story home" with multiple adult occupants.[3] (Def. Ex. A at 832.) As Defendants have not shown that any allegedly false statements or omissions were necessary to a finding of probable cause, the Court DENIES Defendants' Motion to Suppress and Request for a Franks hearing.

---

[3] The Affidavit does recount that eight apparently unrelated adults were located within the residence on January 2, 2018 and the six apparently unrelated adults were in the Target Residence on January 7, 2018. The warrant also describes three vehicles located on the property that were registered to three separate individuals. Likewise, the trash pull included mail addressed to two apparently unrelated adults at 38 Beech Street. This mail was addressed to two of the eight adults identified at the Target Residence on January 2, 2018.

**III. CONCLUSION**

For the reasons just stated, the Defendants' Motion to Suppress & Request for a <u>Franks</u> Evidentiary Hearing (ECF No. 57) is DENIED and the Motion to Seal (ECF No. 58) is GRANTED subject to counsel filing redacted exhibits.

SO ORDERED.

/s/ George Z. Singal<br>United States District Judge

Dated this 10th day of April, 2019.